**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| PIPER M. KELLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-1610 |
| | ) | |
| MERCY HOSPITAL SOUTH, | ) | |
| | ) | |
| Defendant. | ) | |

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Mercy Hospital South, (hereinafter "Defendant" or "Mercy") hereby gives notice of the removal of the above-styled action to this Court from the Circuit Court of the City of St. Louis, State of Missouri. In support of its Notice of Removal, Defendants state as follows:

**THE STATE COURT ACTION**

1. Plaintiff Piper M. Kelly commenced this action on October 22, 2025, by filing her Petition in the case styled, *Piper M. Kelly v. Mercy Hospital South*, Case No. 2522-CC09563, in the Circuit Court of the City of St. Louis, Missouri (the "**State Court Action**").

2. All records and proceedings from the State Court Action are attached hereto as **Exhibit A**.

3. In her Petition, Plaintiff attempts to state claims for Retaliation in Violation of the Missouri Whistleblower Protection Act (Count I); Wrongful Termination in Violation of Missouri Public Policy (Count II); Negligence (Count III); Breach of Contract (Count IV); Promissory Estoppel (Count V); Fraudulent Misrepresentation (Count VI); Negligent Infliction of Emotional Distress (Count VII); Intentional Infliction of Emotional Distress (Count VIII); Tortious Interference With Contractual Relations (Count IX); Vexatious Refusal to Pay Insurance Claims

(Count X); and Defamation (Count XI).

## VENUE

4.      Removal to this Court is appropriate because the State Court Action is pending in the Circuit Court of the City of St. Louis, Missouri, which is located in the Eastern District, Eastern Division's jurisdiction. 28 U.S.C. §§ 1441(a), 1446(a).

## TIMELINESS OF REMOVAL

5.      This Notice of Removal is timely because it is filed within the 30-day period prescribed by 28 U.S.C. § 1446(b).

## DIVERSITY JURISDICTION

6.      This Court has diversity jurisdiction under 28 U.S.C. § 1332, which requires the parties to the controversy to be citizens of different states and the amount in controversy to exceed $75,000. 28 U.S.C. § 1332(a)(1).

1.      At the time this action was filed and at the time of removal, Plaintiff was a citizen of Illinois.

2.      Although Plaintiff alleges in her Petition that she is a citizen of Missouri, the evidence demonstrates otherwise. A party's "[c]itizenship is determined by a person's physical presence in a state along with his intent to remain there indefinitely." *Altimore v. Mount Mercy College*, 420 F.3d 763, 768 (8th Cir. 2005). In determining domicile, Courts look at a person's "driver's license, current residence, voter registration, past voting venues, location of bank accounts and personal property, membership in churches and other organizations, tax payments, and automobile registration[.]" *Powell v. Rowe,* 2007 WL 9808123, at *3 (E.D. Mo. Jan. 19, 2007); *Spight v. Caterpillar, Inc.,* 2016 WL 3546411, at *1 (W.D. Mo. June 24, 2016) (noting factors courts consider in determining domicile include where a party pays taxes, resides, and works).

2

3.      Here, a background investigation reveals that Plaintiff both resided at, and continues to reside at, an Illinois address, most recently in Glen Carbon, Illinois.[1] *See* Declaration of Alicia Christ ("Christ Decl."), attached hereto as **Exhibit B**, ¶¶ 4, 6. Plaintiff has been associated with an Illinois address since at least 2012. *Id.* at ¶ 6. Plaintiff also identified an Illinois address as part of her state court filings in this case. *Id.* at ¶ 11; Exhibit D to Christ Decl. Further, Plaintiff is currently registered to vote in Illinois. *Id.* at ¶ 10; Exhibit C to Christ Decl. Plaintiff also represents Glen Carbon, Illinois, as her location on her public LinkedIn profile. *Id.* at ¶ 7; Exhibit A to Christ Decl. Plaintiff's public LinkedIn profile states that she most recently worked at Residential Home Health and Hospice, which operates in locations throughout southern Illinois, including in Glen Carbon, but does not operate in eastern Missouri. *Id.* at ¶¶ 8-9; Exhibit B to Christ Decl. (showing locations in Illinois and Missouri where Residential Home Health and Hospice operates). Thus, Plaintiff's domicile is in Illinois, and she is a citizen of Illinois.

7.      Defendant Mercy Hospital South is a non-profit corporation organized under the laws of Missouri and has its principal place of business in Missouri. Thus, Defendant is a citizen of Missouri.

8.      Under 28 U.S.C. § 1332(a)(1), the district court "shall have original jurisdiction of all civil actions where the matter in controversy . . . is between [] citizens of different States[.]"

9.      Complete diversity of citizenship exists between Plaintiff and Defendant.

### DEFENDANT HAS NOT BEEN "PROPERLY JOINED AND SERVED"

10.     Defendant has not been "properly joined and served" in the State Court Action and is entitled to remove this case to federal court.

---

[1] The background investigation reveals that Plaintiff's current address is 26 Windermere Dr., Glen Carbon, IL 62034, a residence owned by her attorney of record. Id. at ¶ 5.

11.     On August 25, 2025, Plaintiff's counsel inquired whether Defendant would waive service of process. *See* Email, attached hereto as **Exhibit C.** On September 3, 2025, Defendant's counsel responded that "Mercy has agreed to waive service. You can serve [its outside counsel] by email rather than serving the registered agent." *Id.* Defendant did not offer any position on jurisdiction and removal. *See id*. On October 22, 2025, Plaintiff's counsel emailed a copy of the state court complaint to Defendant's counsel, stating: "Thank you again for confirming Mercy's waiver of service. Please confirm receipt of the file stamped Petition when you can." *See* Email, attached hereto as **Exhibit D.** No further discussions, concerning service or otherwise, were exchanged.

12.     Plaintiff failed to comply with Missouri's explicit procedure necessary to effectuate a waiver of service. Specifically, Missouri law states:

> **Acknowledgment of Service.** When a defendant shall acknowledge in writing, endorsed on the process, signed by the defendant's own proper signature, the service of such process, and waive the necessity of the service thereof by an officer, such acknowledgment shall be deemed as valid as service in the manner provided by law. Acknowledgment of service by mail may also be made as provided in Rule 54.16.

Missouri Supreme Court Rule 54.13(c); *see also* Mo. Rev. Stat. § 506.150 (substantively similar to Rule 54.13(c)). Plaintiff did not request that Defendant provide the mandatory written and signed acknowledgement under Missouri law. Defendant has thus not waived service under Missouri law and has not otherwise been served.

13.     Under the plain language of Section 1441(b), Defendant is entitled to remove the State Court Action on the basis of diversity jurisdiction. The forum-defendant rule set forth in Section 1441(b)(2) plainly states that an action "may not be removed if any of the parties in interest ***properly joined and served*** as defendants is a citizen of the State in which such action is brought." (emphasis added). Such pre-service removal by a forum-state defendant is referenced by the courts

4

as a "snap removal." *Cagle v. NHC Healthcare-Maryland Heights, LLC*, 78 F.4th 1061, 1066 (8th Cir. 2023).

14.    Federal appellate courts that have addressed the issue have uniformly held that the forum-defendant rule is inapplicable to such snap removals until a forum defendant is served in accordance with state law. *See Texas Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 486 (5th Cir. 2020) (holding that "[t]he forum-defendant rule's procedural barrier to removal was irrelevant" until service of a citizen of the forum state); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019) ("By its text, then, Section 1441(b)(2) is inapplicable until a home-state defendant has been served in accordance with state law; until then, a state court lawsuit is removable under Section 1441(a) so long as a federal district court can assume jurisdiction over the action."); *McCall v. Scott,* 239 F.3d 808, 813 n.2 (6th Cir. 2001) ("[T]he inclusion of an unserved resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b).").

15.    The Third Circuit upheld a snap removal under facts nearly identical to those here. In *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147 (3d Cir. 2018), counsel for defendant stated in an email that "[i]n the event [plaintiff] chooses to file suit in this matter, I will be authorized to accept service of process" and that "if and when you do file, provide your Complaint to me along with an Acceptance form." *Id*. at 150. After filing, plaintiff's counsel emailed the complaint and acceptance form to defendant's counsel, who opted to snap remove the case to federal court. *Id*. After considering the express language of the statute, the fact that counsel's communications did not address their positions on jurisdiction and removal, and concluding that service was incomplete under state law, the Third Circuit "determined that the case was properly removed to federal court." *Id*. at 154. Similarly, in *Doe v. Salesforce, Inc.*, 2024 WL 1092539 (S.D. Tex. Mar. 13, 2024), the court held that, even though defendant purportedly agreed

5

to waive service via email, snap removal was effective because the defendant did not waive service as required by state law. *Id.* at *2.

16.     Although the Eighth Circuit has not yet addressed snap removals definitively, this Court has recently upheld snap removals and held, consistent with the above authorities, that snap removals are authorized by Section 1441(b)(2) where, like this case, complete diversity exists. In *Tillman v. BNSF Ry. Co.*, 2021 WL 842600, *2 (E.D. Mo. March 5, 2021), a defendant removed a Missouri state court action to the United States District Court for the Eastern District of Missouri just two days after the plaintiff filed the lawsuit and before service of any named defendant including those who were Missouri citizens. The plaintiff did not challenge the existence of diversity jurisdiction but sought remand based on application of the forum-defendant rule. *Id.* The court ruled that the plain language of Section 1441(b)(2) authorizes the snap removal exception. *Id.* at *3. While the court observed inconsistent narrower approaches to the snap removal exception applied in other decisions, it ruled that a plain reading of Section 1441(b)(2) authorizes removal prior to service of any defendant including the removing defendant. *Id.* Similarly, in *Rhoads v. Webster Univ.*, 2023 WL 3496134, *1-2 (E.D. Mo. May 17, 2023), the Court denied the motion for remand, acknowledging that the forum-defendant rule is not jurisdictional. *See also Gaarder v. Webster Univ.*, 2023 WL 3790601, at *1 (E.D. Mo. June 2, 2023).

17.     In *M & B Oil, Inc. v. Federated Mut. Ins. Co.*, 66 F.4th 1106 (8th Cir. 2023) (remanded due to lack of complete diversity), the Eighth Circuit explained that snap removal "has nothing to do with the complete-diversity requirement," but instead, "offers a potential solution to a different problem: the forum-defendant rule." *Id.* at 1109. The Court further noted that many courts have held that the forum-defendant rule does not apply when an action is removed before the forum-defendant is served. *Id.* at 1109-10 (citing *Tex. Brine*, 955 F.3d at 485–87); *Gibbons,*

919 F.3d at 704-07; *Encompass*, 902 F.3d at 151-54; *McCall*, 239 F.3d at 813 n.2.

18.    Just a few months later, the Court's opinion in *Cagle v. NHC Healthcare-Maryland Heights, LLC*, 78 F.4th 1061, 1066 (8th Cir. 2023) noted that "snap removal—the practice of removing a case before the plaintiff has 'properly joined and served' the forum-state defendant— arguably allows a defendant to satisfy the additional requirement of § 1441(b)(2) that no 'properly joined and served' defendant is a citizen of the forum State."

19.    The removal is timely and not barred by the forum-defendant rule.

## AMOUNT IN CONTROVERSY

20.    Plaintiff's Petition explicitly pleads compensatory damages "**in excess of $100,000.00** for denied medical expenses, lost wages, emotional distress, and other harms[.]" *See See* Ex. A, Petition "Wherefore" clauses for Damages and Prayer for Relief (emphasis added). As such, although Defendant denies that it has engaged in any unlawful conduct or that Plaintiff is entitled to any relief, assuming *arguendo* that Plaintiff should be entitled to damages in this case, the amount in controversy clearly exceeds the $75,000 minimum jurisdictional amount of 28 U.S.C. § 1332, exclusive of interest and costs.

21.    In addition to seeking damages exceeding $100,000 for alleged denied medical expenses, Plaintiff prays for judgment on her *eleven-count* Petition to include: lost wages and salary; lost employment benefits; emotional distress, mental anguish, anxiety, humiliation, and disruption to her personal and professional life; loss of future educational and professional opportunities; harm to financial reputation and creditworthiness; pain and suffering; statutory penalties and enhanced damages under the Missouri Whistleblower Protection Act, the Missouri Merchandising Practices Act, and Missouri vexatious refusal statutes; punitive damages; attorneys' fees; litigation costs; and such further relief as the Court deems just and proper. *See* Ex.

A, Petition "Wherefore" clauses for Damages and Prayer for Relief

22. Thus, given Plaintiff's explicit pleading seeking damages in excess of $100,000, this case clearly involves an amount in controversy exceeding $75,000.

23. The amount in controversy is met if a fact finder "might legally conclude" that the damages exceed $75,000, including actual damages, punitive damages, and attorneys' fees. *See Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002) ("The jurisdictional fact in this case is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are[.]"). "What matters is what is possible, not what is likely; if it is possible for the plaintiff to recover more than $75,000, the amount-in-controversy requirement is met." *Newbauer v. Hill-Rom Co. Inc.*, 2018 WL 2411617, at *1 (D. Minn. May 29, 2018) (emphasis in original); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."). In establishing the amount in controversy, "Defendant's burden is a pleading requirement and not a demand for proof." *Spight v. Caterpillar, Inc.*, 2016 WL 3546411, at *2 (W.D. Mo. June 24, 2016).

24. Verdicts and judgments in defamation cases have far exceeded $75,000. *See, e.g., Scott v. LeClercq*, 136 S.W.3d 183, 186 (Mo. App. 2004) (awarding $100,000 in actual damages on defamation claim); *Johnson v. Allstate Indem. Co.*, 278 S.W.3d 228, 232 (Mo. App. 2009) (awarding $900,000 in actual damages on defamation claim); *Keenan v. Computer Assocs. Int'l, Inc.*, 13 F.3d 1266, 1268 (8th Cir. 1994) (awarding $100,000 on defamation claim); *Smith v. Des Moines Pub. Sch.*, 259 F.3d 942, 946 (8th Cir. 2001) (awarding $250,000 in compensatory damages on defamation claim).

25.     Plaintiff also alleges Defendant caused her emotional distress. *See* Ex. A, Petition "Wherefore" clauses for Damages and Prayer for Relief. Compensatory damages for emotional distress in employment cases often range from $50,000 to $150,000, even when the only evidence of emotional distress comes from the testimony of the Plaintiff. *See, e.g., Eich v. Board of Regents for Cent. Missouri State Univ.*, 350 F.3d 752, 763 (8th Cir. 2003) ($200,000 award for emotional distress damages upheld); *Mathieu v. Gopher News Co.*, 273 F.3d 769, 782-83 (8th Cir. 2001) (finding $165,000 emotional distress award not excessive where plaintiff was only witness to testify about emotional distress).

26.     Plaintiff is also seeking attorneys' fees. Under the Missouri Whistleblower Protection Act, a successful plaintiff is entitled to recover reasonable attorneys' fees. *See* Mo. Rev. Stat. § 285.575.8. If she prevails at trial, it is reasonably certain that her attorney's fees will exceed $75,000. *See, e.g., Baker v. John Morrell & Co.*, 382 F.3d 816, 832 (8th Cir. 2004) (affirming award of $163,198.91 in attorneys' fees and $11,728.23 in costs); *Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 935 (8th Cir. 2007) (affirming award of $74,905 in attorneys' fees, plus other damages); *Kline v. City of Kan. City, Mo. Fire Dept.*, 245 F.3d 707, 708 (8th Cir. 2001) ($277,900 in attorneys' fees).

27.     Further, under the Missouri Whistleblower Protection Act, if Plaintiff proves the conduct of Defendant was outrageous because of its evil motive or reckless indifference to the rights of others, she may be entitled to double back pay. *See* Mo. Rev. Stat. § 285.575.7(3).

28.     Plaintiff also seeks punitive damages, which often result in large awards well over $75,000. *See, e.g., Kimzey v. Wal-Mart Stores, Inc.*, 107 F.3d 568, 576–77 (8th Cir. 1997) (affirming judgment awarding $350,000 in punitive damages, which was reduced from a jury award of $50 million); *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854 (Mo. App. E.D.

9

2009) ($325,000 in punitive damages was appropriate); *McGhee v. Schreiber Foods, Inc.*, 502 S.W.3d 658, 675 (Mo. App. W.D. 2016) (affirming $350,000 in punitive damages); *Kader v. Board of Regents of Harris Stowe State Univ.*, Case No. 1222-CC02913 (St. Louis City Circuit Court, April 4, 2017) ($1,750,000 judgment entered after jury verdict in this amount for punitive damages).

29.     Based on the allegations in the Petition (but without making any admissions as to the merits thereof), there is legal certainty that the amount in controversy exceeds $75,000. *See Hirschmugl v. State Farm Fire & Casualty Co.*, 2019 WL 1557090, *2 (E.D. Mo. Apr. 10. 2019) (standard for determining whether a plaintiff's claim meets the amount in controversy is whether the fact finder "*might* legally conclude" that a plaintiff's damages are greater than $75,000) (citing *James Neff Krampfer Family Farm v. IBP, Inc.*, 393 F.3d 828, 833 (8th Cir. 2005)).

30.     Accordingly, because **Plaintiff's Petition expressly pleads that she seeks damages in excess of $100,000**, and for the reasons stated above, the preponderance of the evidence establishes that, if Plaintiff prevails on her claims, her damages and attorneys' fees will exceed $75,000. Therefore, the jurisdictional amount in controversy requirement is satisfied.

31.     Because the diversity requirements under § 1332(a)(1) are met and the amount in controversy exceeds $75,000, this action is also removable under § 1441(a).

### NOTICE PROVIDED TO PLAINTIFF AND STATE COURT

32.     Pursuant to 28 U.S.C. § 1446(d), Defendant has given written notice of its filing of this Notice of Removal to counsel for Plaintiff on the same date as this Notice of Removal was filed.

33.     On the same date as this Notice of Removal was signed, Defendant also filed a copy of this Notice of Removal with the Circuit Court of St. Louis City, Missouri, the state court in

10

which this action was commenced and pending at the time this Notice of Removal was filed.

WHEREFORE, Defendant Mercy Hospital South respectfully requests that the above-entitled action now pending against it in the Circuit Court of St. Louis City, Missouri, be removed therefrom to this Court.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

/s/ *James M. Paul*
James M. Paul, #44232MO
Mallory S. Zoia, #70377MO
7700 Bonhomme Avenue, Suite 650
St. Louis, MO  63105
Telephone:  314.802.3935
Facsimile:  314.802.3936
james.paul@ogletree.com
mallory.zoia@ogletree.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of October 2025, the foregoing was electronically filed via the Court's CM/ECF system and served via electronic mail to the following counsel of record:

Joseph B. Carnduff
10 W. Division St.
Maryville, IL 62062
314-807-4025
jcarnduff@BaileyGlasser.com

Attorney for Plaintiff

/s/ *James M. Paul*
An Attorney for Defendant

12

93417672.v1-OGLETREE