| Respond to Selected Documents

**Sort Date Entries: Descending Ascending**

**Display Options:** All Entries ⌄

**10/22/2025**

**Filing Info Sheet eFiling**

**Filed By:** JOSEPH BENJAMIN CARNDUFF

**Confid Filing Info Sheet Filed**

Confidential Case Filing Information Sheet - Non-Domestic Relations.

**Filed By:** JOSEPH BENJAMIN CARNDUFF

**On Behalf Of:** PIPER M KELLY

**Pet Filed in Circuit Ct**

ST. LOUIS CITY PETITION FOR DAMAGES.

**Filed By:** JOSEPH BENJAMIN CARNDUFF

**On Behalf Of:** PIPER M KELLY

EXHIBIT A

Electronically Filed - City of St. Louis - October 22, 2025 - 12:26 PM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT
STATE OF MISSOURI

| | | |
|---|---|---|
| PIPER M. KELLY | ) | |
| Plaintiff, | ) | Case No:_____ |
| | ) | |
| v. | ) | |
| | ) | |
| MERCY HOSPITAL SOUTH, *a Missouri* | ) | |
| *Non-profit corporation* | ) | |
| | ) | |
| Defendant. | ) | |

## PETITION FOR DAMAGES

COMES NOW Plaintiff, Piper M. Kelly ("Plaintiff"), by and through her undersigned counsel, Bailey & Glasser, LLP, and for her causes of action against Defendant Mercy Hospital South ("Defendant" or "Mercy"), states as follows:

### I. INTRODUCTION

1.      Plaintiff, while hospitalized with a serious medical condition, remained employed by Defendant until her wrongful termination on February 6, 2024. Defendant then, acting in bad faith months later, backdated Plaintiff's termination date to retroactively cancel her health insurance coverage for a fifteen (15) day hospitalization, evading responsibility for over $100,000.00 in legitimate medical expenses.

2.      As a result of Defendant's unlawful actions, Plaintiff has suffered substantial damages, including financial loss, severe emotional distress, and loss of enjoyment of life and dignity.

### II. PARTIES AND JURISDICTION

Electronically Filed - City of St. Louis - October 22, 2025 - 12:26 PM

3. Plaintiff, Piper M. Kelly, ("Plaintiff") is an individual and citizen of the State of Missouri who, at all times relevant hereto, resided in the City of St. Louis, Missouri. Plaintiff's employment with Defendant occurred in the St. Louis Metropolitan area, and the unlawful acts giving rise to this action - including the backdating of her termination date and cancellation of health insurance benefits - were directed to and felt within the City of St. Louis, where Plaintiff lived, received correspondences, and suffered the resulting harm.

4. Defendant, Mercy Hospital South ("Defendant" or "Mercy"), is a Missouri non-profit corporation organized and existing under the law of the State of Missouri, with its principal place of business located in St. Louis County, Missouri. Defendant operates as part of the larger Mercy Health System, which maintains hospitals, clinics, and business operations throughout Missouri, including substantial, continuous, and systemic activities within the City of St. Louis.

5. Defendant has purposefully availed itself of the privilege of conducting business in the City of St. Louis by, among other things:

    a) Advertising, marketing, and soliciting patients and employees within the City of St. Louis;

    b) Recruiting, hiring, and employing numerous City residents, inducing Plaintiff, to perform services on behalf of Mercy in the St. Louis region;

    c) Maintaining referral networks, outreach programs, and mobile services that routinely serve City residents, and

    d) Deriving substantial revenue from patients, vendors, and insurers located in the City of St. Louis.

Electronically Filed - City of St. Louis - October 22, 2025 - 12:26 PM

6.     Venue is proper in the Circuit Court of the City of St. Louis under RSMo § 508.010.5(1) because Plaintiff's injuries and damages were first sustained in the City of St. Louis, where she resided at all relevant times and where she received, relied upon, and was harmed by Defendant's fraudulent and retaliatory conduct. These include: the COBRA election notice sent to her St. Louis City address, the denial of her insurance claims, and the collection actions and credit damage suffered at her City residence.

7.     The wrongful acts giving rise to this action were intentionally directed toward Plaintiff in the City of St. Louis, and the brunt of the harm was likewise felt and endured by Plaintiff in the City, making this venue proper under Missouri law. Even if Defendant's conduct occurred in St. Louis County, venue remains proper where the plaintiff suffers the injuries from tortious conduct, including fraud, retaliation, and financial harm.

### III. FACTUAL ALLEGATIONS

8.     Plaintiff Piper M. Kelly ("Plaintiff") is a licensed registered nurse who faithfully served the patients of Mercy Hospital South ("Mercy") in St. Louis, Missouri. After a year of loyal service and performance, Mercy wrongfully and unlawfully terminated her employment on or about February 6, 2024, while she was hospitalized and sedated for a serious, life-threatening medical emergency.

9.     In early January 2024, Plaintiff began experiencing worsening urinary-tract and flank pain symptoms. She promptly informed her supervisors that she was under medical evaluation but continued to work her assigned 12-hour nursing shifts despite escalating illness. Those symptoms were later diagnosed as a severe kidney infection and abscess that would require a prolonged hospital stay and emergency surgery.

Electronically Filed - City of St. Louis - October 22, 2025 - 12:26 PM

10.     On or about February 1, 2024, just days after completing her final shift at Mercy, Plaintiff was admitted on an emergency basis to Pinckneyville Community Hospital in Pinckneyville, Illinois. Her condition deteriorated rapidly, requiring IV antibiotics, pain management, and continuous inpatient care.

11.     While Plaintiff remained hospitalized, sedated, and under treatment, and one day before her scheduled emergency kidney surgery, Mercy abruptly terminated her employment on or about February 6, 2024. The termination was carried out without investigation, communication, or any interactive process and in complete disregard of Mercy's own medical-leave and employee-health policies.

12.     Before February 6, Mercy was aware that Plaintiff had been hospitalized and medically restricted from working. Despite this knowledge, and despite a year of dedicated service - Mercy made no effort to provide leave or any accommodation. Instead, Mercy unilaterally processed a termination while Plaintiff was incapacitated and unable to advocate for herself.

13.     On or about February 7, 2024, Plaintiff's treating physicians determined that her condition was critical, necessitating an emergency transfer to HSHS St. Elizabeth's Hospital in O'Fallon, Illinois, where she underwent urgent kidney surgery and remained hospitalized through February 15, 2024.

14.     Mercy's decision to terminate Plaintiff in the midst of this medical crisis was retaliatory, unlawful, and calculated, a decision made to preempt her ability to invoke protections under Missouri's medical-leave, whistleblower, and insurance-continuation laws.

15.     By discharging an employee in the middle of emergency medical treatment, Mercy violated clearly defined mandates of Missouri public policy, including those codified in the Missouri Human Rights Act (RSMo § 213.070), the Missouri Whistleblower Protection Act

Electronically Filed - City of St. Louis - October 22, 2025 - 12:26 PM

(RSMo § 285.575), and Missouri's long-standing common-law prohibition on terminating employees for exercising statutory or public rights.

16.    On or about March 1, 2024, Plaintiff received by mail a COBRA election notice issued by Mercy's benefits administrator. The notice expressly confirmed that her group-health coverage under Mercy's plan remained active through February 29, 2024 - two weeks after her hospital discharge. Relying on that official representation, Plaintiff reasonably believed that her February hospitalization and surgery were covered events under Mercy's plan.

17.    Months later, beginning in approximately September 2024, Plaintiff began receiving unexpected medical bills exceeding $100,000, together with notices that previously covered charges were now denied or reversed. Upon inquiry, Plaintiff learned that Mercy had unilaterally and retroactively backdated her termination date, erasing her insurance coverage during the exact period she was hospitalized.

18.    This administrative manipulation rendered her health-insurance coverage void retroactively, leaving her personally responsible for all treatment costs incurred between February 1 and February 15, 2024, costs that were legitimate, necessary, and initially covered under Mercy's group plan.

19.    Plaintiff repeatedly contacted Mercy's Human Resources and Benefits Departments to report the error and request correction. Rather than investigate or assist, Mercy representatives told her that her employment record was "closed" and that she would need to "subpoena her file" to reopen it.

20.    As a direct result of Mercy's actions, Plaintiff's accounts were sent to debt collections, her credit severely damaged, and her emotional distress compounded by months of

Electronically Filed - City of St. Louis - October 22, 2025 - 12:26 PM

financial pressure, calls from debt collectors, and public reporting of medical debt, all stemming from an unjust termination and falsified employment record.

21. Mercy's retaliatory conduct, including the backdating of her termination and the concealment of coverage changes – was intentional, willful, and malicious, undertaken to: (a) punish Plaintiff for her medical absence; (b) shift financial liability for her hospitalization onto her personally; and (c) obscure the retaliatory motive by fabricating an employment record inconsistent with Mercy's own COBRA documentation.

22. Mercy's actions further violated Missouri public policy protecting employees from retaliation for reporting, refusing to participate in, or being harmed by unlawful or deceptive business practices, including fraudulent insurance reporting and interference with rights to continued health-coverage under COBRA and related Missouri statutes.

23. By terminating Plaintiff while hospitalized, falsifying her employment records, and misrepresenting the status of her benefits, Mercy acted in reckless disregard of her rights, contravening Missouri law and fundamental notions of good faith and fair dealing.

24. As a proximate result of Mercy's misconduct, Plaintiff has suffered substantial economic loss, damage to her credit and professional reputation, mental anguish, and ongoing emotional distress, all of which were foreseeable and preventable had Mercy honored its obligations and the law.

## IV. CLAIMS FOR RELIEF

### COUNT I: RETALIATION IN VIOLATION OF MISSOURI WHISTLEBLOWER PROTECTION ACT (RSMO §285.575)

25. Missouri's Whistleblower Protection Act makes it *unlawful for an employer to discharge an employee* because the employee is a "protected person" (i.e. a whistleblower).

Electronically Filed - City of St. Louis - October 22, 2025 - 12:26 PM

26.    A "protected person," as defined by § 285.575 RSMo, includes an employee who refuses to engage in or is prevented from participating in unlawful acts, or *who otherwise exercises a legal right that public policy strongly protects.*

27.    Plaintiff qualifies as a "protected person", at the time of her termination, she was on leave exercising her legal right to obtain *emergency medical treatment* and notified Defendant of her hospitalization and inability to work prior to termination.

28.    Missouri law and public policy safeguard employees who seek necessary medical care from retaliatory discharge. Terminating an employee on medical leave during a medical emergency constitutes retaliation against a protected person under the Act.

29.    At the time of her termination, Plaintiff was hospitalized for six days receiving emergency medical treatment for a serious health condition. Defendant was aware of her medical emergency and inability to report to work, which is a legally protected act under Missouri law and public policy. Plaintiff was therefore a "protected person" within the meaning of §285.575, as she exercised her right to obtain emergency medical care and to be free from retaliation or discharge for doing so. Terminating an employee because she sought or required emergency medical treatment constitutes unlawful retaliation under Missouri's Whistleblower Protection Act and violates Missouri's clear mandate of public policy protecting the health and safety of employees.

30.    Defendant terminated Plaintiff's employment because of Plaintiff's protected activity, making the protected activity "the motivating factor" in the discharge. Plaintiff's termination constituted retaliation for exercising a right protected by Missouri law- namely, her right to obtain and receive emergency medical treatment, to preserve her own health and safety, and to be free from discharge or discrimination for doing so. Missouri public policy strongly

Electronically Filed - City of St. Louis - October 22, 2025 - 12:26 PM

protects employees who seek necessary medical care from retaliatory discharge, independent of any federal statute.

## COUNT II: WRONGFUL TERMINATION IN VIOLATION OF MISSOURI PUBLIC POLICY

31.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

32.    At all relevant times, Plaintiff was an employee and she was entitled to the protections of Missouri's public policy against terminating employees for exercising or attempting to exercise rights related to their health and safety.

33.    Plaintiff experienced a serious medical emergency and was hospitalized beginning on February 1, 2024, through February 15, 2024.

34.    Plaintiff's hospitalization and medical treatment constituted a legitimate and protected exercise of her rights under Missouri law to seek and obtain necessary medical care, to refrain from working under unsafe or medically contraindicated conditions, and to take a reasonable medical leave from employment.

35.    Missouri law recognizes a clear mandate of public policy protecting employees who, in good faith, seek medical treatment or are absent from work due to bona fide medical emergencies. See, i.e., § 285.575, RSMo (Missouri Whistleblower's Protection Statute) and Missouri common-law public-policy exceptions to at-will employment.

36.    Defendant knew of Plaintiff's hospitalization and medical incapacity at the time it terminated her employment.

37.    Despite such knowledge, Defendant fired Plaintiff while she was hospitalized on or about February 6th, 2024.

Electronically Filed - City of St. Louis - October 22, 2025 - 12:26 PM

38.    Defendant's discharge of Plaintiff while she was on protected medical leave violates Missouri's clear public policy favoring the protection of employees who, through no fault of their own, are temporarily unable to work due to serious medical conditions.

39.    Defendant's conduct was willful, wanton, and malicious, and directly caused Plaintiff loss of income, loss of insurance benefits, out-of-pocket medical expenses, damage to credit, emotional distress, and other compensatory damages.

40. Defendant's termination of Plaintiff while she was hospitalized and unable to work violated Missouri's clear mandate of public policy, which protects employees from discharge for seeking emergency medical treatment or taking necessary medical leave. Even if Plaintiff was an at-will employee, Defendant's conduct falls within the recognized exception to the at-will doctrine. The retaliatory discharge of an employee during a bona fide medical emergency undermines public policy encouraging citizens to obtain proper medical care and safeguard their health and safety.

## COUNT III: NEGLIGENCE (ADMINISTRATIVE MISMANAGEMENT)

41.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

42.    Defendant owed Plaintiff a duty to exercise reasonable care in administering employment matters, including maintaining accurate employment records and benefits coverage. In Missouri, to establish negligence, a plaintiff must prove four elements: (1) the existence of a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) proximate *causation* (that the breach caused injury); and (4) *damages* suffered by the plaintiff.

43.    Defendant breached its duty through *administrative mismanagement and carelessness*. Specifically, Defendant mishandled Plaintiff's employment status and benefits - for example, an inadvertent "profile change" error by Defendant caused Plaintiff's termination date to change, terminating Plaintiff's health insurance coverage without proper notice. By Defendant's

Electronically Filed - City of St. Louis - October 22, 2025 - 12:26 PM

own admission in communications with Plaintiff, this was an alleged "inadvertent" error, evidencing a failure to use reasonable care in managing Plaintiff's employment profile. Such clerical/administrative mistakes were foreseeable and preventable had Defendant exercised due care.

44.     Defendant's breach directly caused harm to Plaintiff. The negligent mismanagement (erroneous termination of Plaintiff's benefits and employment records) led to Plaintiff losing health insurance coverage unexpectedly and other losses. Plaintiff was placed in a financially and emotionally vulnerable position (incurring medical expenses and stress) as a *proximate result* of Defendant's negligence.

45.     Plaintiff suffered actual damages due to this negligence, including uninsured medical costs, out-of-pocket expenses, credit ruin, and emotional distress from the uncertainty and loss of insurance. These damages were the natural and foreseeable consequence of Defendant's administrative negligence. Plaintiff seeks to recover all such losses, expenses, and other compensatory damages proximately caused by Defendant's breach of duty. This claim does not allege mere breach of contract but independent tortious negligence in the administration of employment and benefits records.

### COUNT IV: BREACH OF CONTRACT (EMPLOYMENT AND BENEFITS)

46.     Plaintiff realleges and incorporates by reference all preceding paragraphs.

47.     Plaintiff and Defendant had a valid and enforceable employment agreement, which included *promises regarding Plaintiff's compensation and benefits*. Although Plaintiff's employment was at-will, Defendant's policies and communications created contractual obligations concerning certain benefits (such as health insurance coverage, paid leave, and other earned benefits). Additionally, any employee benefit plans constitute contracts under which Defendant

Electronically Filed - City of St. Louis - October 22, 2025 - 12:26 PM

owed duties to Plaintiff (the insurance coverage for a period of time in exchange for premiums/contributions paid by Plaintiff).

48.    Plaintiff performed all conditions and obligations on their part under the contract. Plaintiff faithfully rendered services as an employee and fulfilled all job duties. Plaintiff also paid any required contributions (such as insurance premium deductions) and met eligibility requirements for the benefits promised.

49.    Defendant materially breached the contract by failing to honor its obligations. This breach took multiple forms, including: (a) Wrongfully terminating Plaintiff without legally valid cause, thereby violating any implied covenant of good faith and fair dealing in the employment relationship; (b) Failing to provide Plaintiff with earned benefits and wages (for example, abruptly cutting off Plaintiff's health insurance benefits immediately upon termination, despite Plaintiff having paid for coverage, and not allowing coverage to continue through the period that had been paid for). By making an "inadvertent profile" change that canceled coverage prematurely, Defendant did not perform as promised under its policies/plan documents. These actions constitute breaches of the agreed terms of employment and benefit plans. Plaintiff has satisfied these elements - a contract existed, Plaintiff performed, Defendant breached its promises, and Plaintiff incurred financial harm.

50.    Plaintiff seeks all appropriate contract damages to place them in the position they would have been in had Defendant honored its obligations (including back pay, the cost of obtaining alternative insurance, and other consequential damages).

**COUNT V: PROMISSORY ESTOPPEL (IN THE ALTERNATIVE TO BREACH OF CONTRACT)**

51.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

Electronically Filed - City of St. Louis - October 22, 2025 - 12:26 PM

52.     In the event that no express contract is found to cover the promises at issue, Plaintiff pleads promissory estoppel as an alternative cause of action. This count applies to any promises Defendant made to Plaintiff which may not be formally integrated into a contract.

53.     Defendant (through its agents and policies) made clear and definite promises to Plaintiff. These promises included, for example, assurances that Plaintiff would continue to receive certain benefits or continued employment under specified conditions. Defendant explicitly represented (or by policy implicitly promised) that Plaintiff's health insurance coverage would remain active through a certain date.

54.     Defendant expected or should have expected that Plaintiff would rely on these promises. Indeed, Plaintiff did reasonably rely on Defendant's promises to their detriment. For instance, Plaintiff relied on the promise of ongoing health insurance coverage by not seeking alternative insurance or medical care before termination. Plaintiff also relied on job security assurances by continuing employment and foregoing other opportunities. This reliance was detrimental to Plaintiff, when Defendant did not follow through on its promises, Plaintiff was left without a job or insurance unexpectedly, suffering financial and personal harm.

55.     Injustice can only be avoided by enforcing Defendant's promises. Plaintiff's reliance was reasonable and induced by Defendant's representations. If Defendant is not held to those promises, Plaintiff will unjustly suffer the loss of benefits and opportunities that were promised. Therefore, under promissory estoppel, Defendant's promises should be enforced to award Plaintiff what was promised (or an equivalent in damages). All elements of promissory estoppel are present: (1) a promise; (2) Plaintiff's detrimental reliance on it; (3) Defendant's foreseeable expectation of such reliance; and (4) an outcome where only enforcing the promise

Electronically Filed - City of St. Louis - October 22, 2025 - 12:26 PM

can avoid injustice. Plaintiff seeks reliance damages and/or full enforcement of the promises (such as compensation for lost insurance benefits and employment income).

## COUNT VI: FRAUDULENT MISREPRESENTATION

56.     Plaintiff realleges and incorporates by reference all preceding paragraphs.

57.     Defendant (through its officers or managers) made materially false representations of fact to Plaintiff. These misrepresentations may have occurred during Plaintiff's employment and termination process. For example, Defendant misrepresented and falsely assured Plaintiff about the status of health benefits through, including but not limited to: COBRA election form and tax documentation. Each such statement was a representation of fact that was false and important to Plaintiff's decisions.

58.     Defendant knew that these representations were false (or was willfully ignorant of the truth) at the time they were made. Moreover, Defendant made the false statements with the intent that Plaintiff rely on them. For instance, by misrepresenting the status of insurance or the effect of an *"inadvertent profile change,"* Defendant intended Plaintiff to believe the situation was a harmless error rather than an act of bad faith.

59.     Plaintiff was unaware of the falsity of Defendant's statements and in fact reasonably relied on these representations. Plaintiff took actions or refrained from taking action based on trust in Defendant's representations – i.e., Plaintiff initially accepted the stated reason for termination or the explanation of the benefits cancellation, and did not immediately seek legal redress or secure alternate insurance because Plaintiff believed Defendant's claims. Plaintiff had a right to rely on Defendant's statements, given the position of trust and authority Defendant held as the employer.

60.     Defendant's fraud directly and proximately caused harm to Plaintiff. As a result of being deceived, Plaintiff suffered financial loss (losing benefits under false pretenses), and other

Electronically Filed - City of St. Louis - October 22, 2025 - 12:26 PM

damages such as emotional distress. Under Missouri law, the elements of fraudulent misrepresentation are: (1) a false, material representation; **(2)** the speaker's knowledge of its falsity (or ignorance of the truth); (3) the speaker's intent that the hearer act on the representation; (4) the hearer's ignorance of the falsity; (5) reliance by the hearer on the truth of the representation; (6) the hearer's right to rely on it; and (7) injury proximately caused.

61.    All these elements are satisfied here. Therefore, Plaintiff seeks damages for fraud, including benefit-of-the-bargain damages or out-of-pocket losses caused by the misrepresentation, and potentially punitive damages given the intentional and malicious nature of the deceit.

## COUNT VII: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (NIED) (IN THE ALTERNATIVE TO COUNT VIII - IIED)

62.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

63.    Defendant, through its negligent acts and omissions, exposed Plaintiff to an unreasonable risk of injury (thus causing foreseeably severe emotional distress). In the course of Plaintiff's termination and benefit cancellation, Defendant's negligence (the mishandling of Plaintiff's employment status/insurance) placed Plaintiff in a situation of sudden financial and health insecurity that a reasonable person would recognize as involving risk of physical harm (i.e. risk of being unable to obtain medical care or medication due to loss of insurance).

64.    Missouri has adopted the "zone of danger" rule for NIED. Here, Plaintiff was present at the scene of an injury-producing event caused by Defendant's negligence, and Plaintiff was within the zone of danger of harm as a result. Specifically, the "event" was Defendant's abrupt termination of Plaintiff's employment while hospitalized and then Defendant interfering with paid insurance claims on or around June-November 2024; the events suddenly left Plaintiff without income or then later coverage for the 15 day hospitalization. Plaintiff experienced an acute,

Electronically Filed - City of St. Louis - October 22, 2025 - 12:26 PM

justified fear for her own physical well-being - for example, fear that without health insurance, a known medical condition or need for medication could result in physical injury or inability to obtain care.

65.     Defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress to Plaintiff. Terminating an employee's livelihood and health coverage in a careless, improper manner is the type of action that would foreseeably cause serious emotional trauma. Indeed, Defendant's negligence did cause Plaintiff to suffer severe emotional distress (anxiety, depression, mental anguish, fear for the future). Plaintiff's distress was significant and medically cognizable.

66.     Plaintiff suffered serious emotional distress (sleeplessness, exacerbation of anxiety and ADHD disorders, and depression) as a direct result of Defendant's negligent acts. Under Missouri law, to recover for NIED the plaintiff generally must show: (1) the defendant's negligent conduct caused an unreasonable risk of injury to the plaintiff, (2) the plaintiff was in the zone of danger (present at the scene of a sudden, injury-causing event and put in fear of physical harm), and (3) the emotional distress resulted in bodily harm or medically significant symptoms.

67.     Plaintiff meets these criteria - Plaintiff was placed in immediate risk (zone of danger) by Defendant's negligence and suffered severe emotional distress with physical manifestations. Therefore, Plaintiff seeks damages for the mental pain and suffering and related medical expenses caused by Defendant's negligence.

**COUNT VIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)**

68.     Plaintiff realleges and incorporates by reference all preceding paragraphs.

69.     Defendant's conduct toward Plaintiff was extreme, outrageous, and utterly intolerable in a civilized community. Firing Plaintiff in retaliation for seeking medical

Electronically Filed - City of St. Louis - October 22, 2025 - 12:26 PM

treatment/while on medical leave, cutting off vital health insurance benefits, and falsely justifying these actions constitutes behavior that goes beyond all possible bounds of decency.

70.     Defendant acted intentionally (or with reckless disregard) in causing Plaintiff severe emotional distress. The decision-makers at Defendant knew that terminating Plaintiff under false pretenses and stripping away benefits would likely cause grave emotional harm, yet they proceeded willfully. Even if they did not specifically intend to traumatize Plaintiff, they acted with reckless indifference to the high probability that their actions would inflict serious emotional distress.

71.     As a direct result of Defendant's outrageous conduct, Plaintiff suffered severe emotional distress. Plaintiff's emotional response was not mere annoyance or hurt feelings, but severe and medically significant anguish. For example, Plaintiff experienced extreme humiliation, anxiety, and depression; required counseling/therapy; and manifested physical symptoms (such as panic attacks or other stress-induced ailments). This level of distress is severe by any reasonable standard – it has substantially affected Plaintiff's daily life and mental health.

72.     Defendant's actions were the actual and proximate cause of Plaintiff's emotional distress. But for Defendant's outrageous retaliation and handling of her health benefits, Plaintiff would not have suffered this mental trauma. The timeline and circumstances make clear that Defendant's behavior triggered Plaintiff's psychological injuries.

73.     In Missouri, to establish IIED, the Plaintiff must prove: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to cause emotional distress or acted with reckless disregard of the likelihood of causing distress; (3) the conduct actually and proximately caused plaintiff to suffer severe emotional distress; and (4) (in some formulations)

Electronically Filed - City of St. Louis - October 22, 2025 - 12:26 PM

that the emotional distress resulted in bodily harm or is medically diagnosable. All these elements are satisfied here.

74. Plaintiff seeks compensatory damages for the emotional pain, suffering, and any resulting physical harm caused by Defendant's outrageous conduct. Additionally, given the malicious and reckless nature of Defendant's behavior, Plaintiff asks for punitive damages on this count to punish and deter such extreme misconduct.

## COUNT IX: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS BY INDIVIDUAL AGENTS OF DEFENDANT

75.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

76.    At all relevant times, Plaintiff had a valid and enforceable contractual and business relationship with Defendant, including but not limited to her at-will employment relationship and her eligibility for continued health insurance and benefits coverage.

77.    These individuals, acting outside the scope of their authority and not for any legitimate business purpose, intentionally and improperly interfered with Plaintiff's contractual and employment relationship. Their actions included, but were not limited to: (a) facilitating or initiating Plaintiff's termination while she was hospitalized; (b) submitting or altering personnel records to backdate her termination date; (c) transmitting false or misleading information regarding her benefit eligibility to internal systems or external insurers.

78.    This interference was undertaken with retaliatory motive, personal animus, or the intent to shield Defendant from paying Plaintiff's medical bills, and was not justified by any good-faith business need, policy violation, or performance issue on Plaintiff's part.

Electronically Filed - City of St. Louis - October 22, 2025 - 12:26 PM

79.    As a direct and proximate result of these individuals' interference, Plaintiff's employment was wrongfully terminated, her health insurance was retroactively canceled, and she suffered financial, emotional, and reputational damages.

80.    Missouri law prohibits third parties, including individual agents acting beyond their scope of employment, from intentionally and unjustifiably interfering with another's contractual or business relationships.

81.    Accordingly, Plaintiff brings this claim against individual officers or agents of Defendant Mercy Hospital South who, while acting in their personal capacity or beyond their lawful duties, induced or caused the wrongful termination of her employment and the backdating of her benefits coverage.

## COUNT X: VEXATIOUS REFUSAL TO PAY INSURANCE CLAIMS – CONSTRUCTIVE OR AIDING-AND-ABETTING INSURER LIABILITY (MO. REV. STAT. §§ 375.296, 375.420)

82.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

83.    Plaintiff was a beneficiary of employer-sponsored group health insurance coverage during her employment with Defendant. At the time of her hospitalization in late January and early February 2024, she was enrolled in and covered under this plan per Mercy's communications with Plaintiff.

84.    On March 1st, 2024, Defendant issued a COBRA election notice via mail advising Plaintiff that her coverage would remain in effect through the end of February 2024. Plaintiff relied on this notice and reasonably believed that her claims related to her hospitalization would be honored under the terms of her employer-provided plan.

85.    Several months later, Plaintiff discovered that Defendant had unilaterally and retroactively altered her termination date in its internal HR/benefits systems. This change resulted

Electronically Filed - City of St. Louis - October 22, 2025 - 12:26 PM

in the retroactive cancellation of her insurance coverage, thereby triggering the denial of over $100,000 in medical claims that had previously been within her coverage period.

86.    Although Defendant is not the insurer in name, its affirmative conduct in manipulating coverage records - with the foreseeable and intended consequence of causing the insurer to deny valid claims - amounts to a constructive refusal to pay those claims.

87.    Mercy's conduct interfered directly and intentionally with the processing of Plaintiff's insurance benefits and caused false information to be transmitted to the plan administrator or insurer for the purpose of avoiding coverage obligations. Mercy acted in bad faith with no reasonable cause or basis for terminating Plaintiff's coverage retroactively.

88.    Under Missouri law, any party who effectively assumes, manipulates, or aids and abets the role of an insurer in order to deny or obstruct valid claims, whether through administrative control, misrepresentation, or improper influence, may be held liable for vexatious refusal to pay under RSMo §§ 375.296 and 375.420.

89.    Mercy's interference was willful, malicious, and without reasonable justification, resulting in substantial financial harm to Plaintiff.

90.    As a result of this constructive denial of coverage, Plaintiff has suffered:

   a)  Over 100,000.00 in denied medical claims;

   b)  Damage to her credit and financial standing;

   c)  Emotional Distress and reputational harm; and

   d)  Additional Costs associated with collections and credit repair.

91.    Plaintiff seeks recovery under Missouri law for vexatious refusal to pay, including: actual damages, statutory penalties and attorney's fees pursuant to RSMo § 375.420, and punitive damages, due to the malicious and intentional nature of Mercy's interference.

Electronically Filed - City of St. Louis - October 22, 2025 - 12:26 PM

## COUNT XI: DEFAMATION - PER QUOD

92. Plaintiff realleges and incorporates by reference all preceding paragraphs.

93. After Plaintiff's hospitalization and termination, Defendant knowingly or recklessly transmitted false information concerning Plaintiff's employment status and insurance eligibility to third-party entities, including its group health insurance administrator and/or affiliated claims processors. Specifically, Defendant retroactively altered Plaintiff's official termination date, and falsely reported that she was not employed or not covered by insurance at the time of her hospitalization.

94. The false information was published to third parties—including, but not limited to, health insurance carriers, billing departments, collection agencies, and possibly credit reporting entities, with no valid basis, and despite Defendant's own prior communications to Plaintiff confirming her coverage through February 29, 2024.

95. As a direct and proximate result of Defendant's false and defamatory statements, Plaintiff experienced widespread denial of medical claims exceeding $100,000, the referral of unpaid bills to collections, significant damage to her credit score and financial standing, and accompanying emotional distress and reputational harm.

96. Defendant's statements imputed to Plaintiff dishonesty, unreliability, and a lack of financial responsibility, thereby harming her in her reputation and standing in the community and in credit markets.

97. These statements were published and communicated with at least negligence as to their truth or falsity.

98. Plaintiff seeks actual and punitive damages against Defendant for its negligent or malicious publication of false statements that caused foreseeable harm.

Electronically Filed - City of St. Louis - October 22, 2025 - 12:26 PM

## VI. DAMAGES

99.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered the following damages:

- Over $100,000.00 in wrongfully denied medical coverage, incurred during her hospitalization and emergency care;

- Lost wages, salary, and employment-related benefits resulting from her unlawful and retaliatory termination;

- Emotional distress, mental anguish, anxiety, humiliation, and disruption to her personal and professional life;

- Loss of future educational and professional opportunities, including Plaintiff's inability to pursue advanced nursing education at Maryville University;

- Harm to Plaintiff's creditworthiness and financial reputation, including damage to her credit score and placement of medical debts into collection;

- Pain and suffering: both mental and emotional, associated with Defendant's malicious and indifferent conduct

- Statutory penalties and enhanced damages, including but not limited to those authorized under the Missouri Whistleblower Protection Act, Missouri Merchandising Practices Act, and Missouri vexatious refusal statutes;

- Attorneys' fees and litigation costs, as permitted by statute and common law.

- Punitive damages, based on Defendant's willful, malicious, fraudulent, or reckless disregard of Plaintiff's legal rights.

Electronically Filed - City of St. Louis - October 22, 2025 - 12:26 PM

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Mercy Hospital South, and award her the following relief:

- Compensatory damages in excess of $100,000.00 for denied medical expenses, lost wages, emotional distress, and other harms;

- Punitive damages to punish and deter Defendant's malicious, fraudulent, and retaliatory conduct;

- Pre-judgment and post-judgment interest;

- Attorneys' fees, expert costs, and all expenses of litigation, as authorized by statute, including Mo. Rev. Stat. § 285.575, 375.296, and 407.025;

- Any other relief the Court deems just and proper.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against Defendant Mercy Hospital South and award Plaintiff the relief requested.

Respectfully submitted,


BAILEY & GLASSER, LLP


By: *Joseph B. Carnduff*, MO Bar # 69993
110 W. Division St.,
Maryville, IL 62062
Telephone: 314-807-4025
Email: Jcarnduff@BaileyGlasser.com
***Attorneys for Plaintiff***